UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DAVID A. KNOWLES and | ) | Case No.  6:11-bk-11717-KSJ |
| CHERYL B. KNOWLES, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OPINION DENYING**
**TRUSTEE'S MOTION TO REJECT EXECUTORY CONTRACT**

Debtors, David and Cheryl Knowles, each own a one-sixth interest in Spring Creek Run, LLC, a Florida limited liability company formed to own and operate 55 acres of rural, agricultural land in Lake County, Florida.  Four of their current or former relatives hold the remaining membership interests in the LLC. The Chapter 7 Trustee, George E. Mills, seeks to 1) reject the operating agreement governing the LLC as an executory contract, and then 2) sell the Debtors' two membership interests in a competitive bidding process, rather than be bound by the rights of first refusal in the LLC's operating agreement.[1] Debtors do not contest the Trustee's ability to sell their membership interests but they do contend the operating agreement is not executory, arguing the Trustee's is improperly attempting to evade the existing LLC's member's right of first refusal.[2]

The Court finds the operating agreement is not executory because, in reality, the Debtors have no real on-going obligations under the operating agreement.  As such, the Court will deny the Trustee's motion.  Any sale of the Debtors' interests in the LLC is subject to the rights of first refusal held by the other co-members.

---

[1] Doc. No. 61 Amended Motion to Reject Executory Contract of Spring Creek Run.
[2] Doc. No. 62 Debtors' Response and Objection to Trustee's Amended Motion to Reject Executory Contract.

The facts are undisputed. On January 7, 2005, the Debtors along with Stephen G. Knowles (David Knowles' brother), Elizabeth J. Knowles (Stephen Knowles' wife), Mary K. Hicks (David Knowles' sister), and Robert G. Hicks (Mary's then but now former husband), formed Spring Creek Run, LLC to own and operate 55 acres of land located in Lake County, Florida (the "Property"). The Property, primarily a family retreat, was given by the Debtor's father to his children and their then spouses. The Property also houses a very small citrus grove, a few head of cattle, and two modest mobile homes.[3]

The six co-owners, in turn, formed the LLC, and, on April 20, 2005, signed an operating agreement for Spring Creek Run (the "Operating Agreement") governing how the Property was to be run.[4] Each co-member contributed $10 to become a "member" with an equal interest in the LLC.[5]

The stated purpose of the Operating Agreement is to "carry on the agricultural production, specifically: citrus, beef, timber, beekeeping, swine, hay, and pasture" at the Property.[6] The Debtors' testimony indicates that the true use of the Property is for family retreats, gatherings, and holiday celebrations. Since 2005, the members have operated the Property as intended, but also consider it somewhat of a retreat.[7] To the extent that any work is required on the Property, Steven Knowles takes care of the problem. No member, other than Steven Knowles, is actively involved in the Property's minimal management duties.

Nor have the co-members made any financial contributions in seven years, other than the initial contribution of $10 and one small capital call of $2,000. Section 3 of the Operating Agreement, which provides: "no members shall be obligated to contribute any more than the amount set forth on Schedule A [initial capital contributions of $10] unless a call is made by the company, by unanimous agreement of the members, in which case the call shall be

---

[3] Doc. No. 61 at 2; Hearing November 15, 2012.
[4] Doc. No. 62 at 2. The Operating Agreement was submitted under Doc. No. 61 Exhibit 1.
[5] Doc. No. 62 at 1.
[6] Doc. No. 61 Exhibit 1 at 1.
[7] Debtors testified they regularly have family dinners on the Property. Hearing November 15, 2012.

proportional to a members' percentage ownership in interest in the company." Any future capital calls only are possible with "unanimous agreement."  With the Debtors' current bankruptcy filing and the Trustee's assumption of the Debtors' interests in the LLC, agreement by the Trustee is virtually impossible.  As such, any possibility of a future capital call is extremely remote and speculative.

On August 1, 2011, Debtors filed bankruptcy.  The bankruptcy trustee filed a Motion to reject the Operating Agreement under Bankruptcy Code § 365 so he can sell the Debtors' interests without having to provide other members with rights of first refusal as outlined in Section 26 of the Operating Agreement.[8] Section 26 provides:

> A member shall have the right to sell his or her ownership interest in the company. However, prior to such sale, such ownership interest shall be offered at the price that would be paid by a third party to persons in the following order: (1) to the member's spouse, if such spouse is also a member of the company; (2) to siblings of the member, if such siblings are also a member of the company; (3) to parents of the ember; (4) to spouses of siblings of a member of the company; (5) **to initial members of the company who are members of the company at the time of the proposed sale;** and (6) to the company itself. Should more than one person entitled to equal priority [desire] to purchase the membership interest, then proportional interests in the interest shall be sold to them. If none of the foregoing six classes choose to purchase such ownership interest, then the sale of the membership interest can be made to a third party.[9]

The Trustee argues Section 26 stifles competition because it requires only that another member meet, but not exceed, the offering price submitted by a prospective purchaser, in this case Mr. Hicks.[10] Robert Hicks has offered $35,000 to purchase the Debtors' membership interests in the LLC.[11] The Trustee argues that because Mr. Hicks is a member, the other family members holding interests in the property only need to offer $35,000, and no more, to

---

[8] Doc. Nos. 59 & 61.
[9] Doc. No. 61 Exhibit 1 at Section 26. (Emphasis added.)
[10] Doc. No. 61 at 2-3.
[11] Doc. No. 61 at 2. According to the Debtor, the assessed value of the property is $101,000.  Mr. Hick's offer of $35,000 represents approximately one third of the value of the property in exchange for debtors' two one-sixth membership interests. Hearing November 15, 2012.

purchase Debtors' interests and frustrate Mr. Hicks' attempt to control the Property. However, if the Operating Agreement is rejected, Section 26 with its rights of first refusal is not enforceable, and any prospective purchaser must offer an amount that *exceeds* Mr. Hicks' bid to buy the Debtors' interests in the LLC.[12] The Trustee, who is charged with maximizing the value of every estate he administers, understandably would like to get the highest price possible for the benefit of the Debtors' creditors.

Mr. Hicks, who is still a co-member of the LLC but is now divorced from Mary Hicks, would like to assume control of the LLC by buying the Debtors' interests. The Knowles family opposes this maneuver hoping to keep their family retreat intact. If the rights of first refusal in the Operating Agreement are upheld, the Knowles family members only need to meet Mr. Hicks' offer to prevent him from controlling the Property.

Whether or not the Trustee may reject the Operating Agreement depends on whether the agreement is considered an executory contract within the meaning of the Bankruptcy Code.[13] The Code does not define the term "executory contract," but the most common definition is a "contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."[14] The Eleventh Circuit Court of Appeals in *In re General Development Corp*. simplified the definition to a contract "on which performance remains due to some extent on both sides."[15] There is a difference of opinion among the courts regarding whether an operating agreement of a limited liability

---

[12] Doc. No. 61 at 3.
[13] All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq.*
[14] Vern Countryman, *Executory Contracts in Bankruptcy (Part I),* 57 Minn. L. Rev. 439, 460 (1973).
[15] *In re Gen. Dev. Corp.,* 84 F.3d 1364 (11th Cir. 1996). *See also Walton et al. v. Clark & Washington, P.C.*, Case No. 8:09-mp-00010-MGW (M.D. Fla. July 11, 2011); *In re Smith*, 185 B.R. 285, 293 (Bankr. S.D. Ill. 1995) *In re Streets & Beard Farm Partnership,* 882 F.2d 233, 235 (7th Cir.1989) (quoting V. Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L. Rev. 439, 460 (1974)).

company is an executory contract.[16] The decision largely hinges on the facts and circumstances of each individual case.[17]

The Trustee argues the Operating Agreement is executory because it requires ongoing management and supervision by all six co-members, because it imposes fiduciary obligations to contribute capital when called upon, and because the co-members have obligations to hold quarterly and annual member meetings.[18]

Debtors urge the Court to reject the Trustee's argument and instead follow the line of cases holding that trailing management obligations and the remote possibility of capital contributions makes the Operating Agreement non-executory.[19] Debtors argue that, in actuality, none of the members are true "managers" because only one member, Steven Knowles, performs the required minimal management functions. Indeed, the Debtors testified that their only responsibility in connection with the Property was to close the gate when they leave.[20] Debtors further claim that, although the LLC has a small bank account that receives revenue from the livestock and grove operations, only one member, Steve Knowles, has signing authority on the account.[21] Lastly, notwithstanding Section 14 of the Operating Agreement, Debtors note there has never been a meeting of the LLC.[22] Therefore, Debtors

---

[16] *In re Warner (Sheehan v. Warner)* 480 B.R. 641, 651 (Bankr. N.D. W.Va. 2012) (operating agreement of LLC was not executory because "there are no material unperformed and continuing obligations owed by the Debtor."). *See also In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 708-09 (Bankr. E.D. Va. 2000) (holding that the LLC's operating agreement was not executory because it only provided structural, not managerial guidance); *In re Prebul*, 08-14010, 2011 WL 2947045 (Bankr. E.D. Tenn. July 19, 2011) (finding the operating agreement was not executory because any obligation of future contribution was remote and hypothetical); *In re Tsiaoushis*, 383 B.R. 616, 619 (Bankr. E.D. Va. 2007) aff'd, 1:07 CV 436, 2007 WL 2156162 (E.D. Va. July 19, 2007) (finding the operating agreement was not executory because the obligation to provide capital contributions was a remote and speculative fiduciary duty). *But see In re Daughtrey Constr., Inc.,* 188 B.R. 607, 612 (Bankr. D. Neb. 1995) and *Allentown Ambassadors, Inc. v. Ne. Am. Baseball, LLC (In re Allentown Ambassadors, Inc.),* 361 B.R. 422, 444 (Bankr. E.D. Pa. 2007) (finding where the operating agreement both requires ongoing capital contributions and imposes management duties, it is often deemed executory); *In re DeLuca,* 194 B.R. 65, 77 (Bankr. E.D. Va. 1996) (concluding the LLC operating agreement was an executory contract because the "object of the agreement—the development of the Parc City Center project—has not yet been accomplished and the parties have on-going duties and responsibilities" to finish the project).
[17] *Id.*
[18] Doc. No. 61.
[19] Doc. No. 62.
[20] Hearing November 15, 2011.
[21] *Id.*
[22] *Id.*

claim the Operating Agreement is not executory because it lacks teeth to impose actual managerial obligations on all its members, there are no material unperformed and continuing obligations under the agreement, and any failure to perform these non-existent duties would not constitute a material breach of the Operating Agreement.[23]

The Court, after reviewing the Operating Agreement and considering the undisputed evidence as to the Debtors' limited roles in the management of the LLC and the actual operations of the LLC, easily finds the agreement is **not** executory.  Steven Knowles independently has assumed all of the management responsibilities, to the extent they exist, for the Property.  In seven years, no other co-member has exercised any management responsibility, regardless of the provisions in the Operating Agreement, other than closing a gate when they leave.  The six co-members have never held a meeting, again, regardless of the provisions in the Operating Agreement.  Nor, given this bankruptcy, the appointment of a Chapter 7 Trustee, and the need for unanimous agreement for any future capital calls, are members likely to make any future capital contributions.

The persuasive and credible evidence shows that the members all look to Steven Knowles to run the property without interference or financial contributions by the other five members.  Other than paying about $2,010 in a seven year period, the Debtors have never taken an official action relating to their membership interest in the LLC.  Moreover, nothing indicates that they or their co-members (other than Steven Knowles) has any has future responsibility to the LLC, other than perhaps some potential remote and speculative obligation in the event Steven Knowles stops caring for of the Property.

Returning to Professor Countryman's definition of an "executory contract", here the Operating Agreement imposes absolutely no obligations on the Debtors that, if unperformed, would constitute a material breach.  Just as in many of the cases holding LLC operating

---

[23] Doc. No. 62 at 3.

agreements are not executory, the Debtors ongoing management and capital contribution duties are remote, improbable, or extremely speculative.[24]

The Operating Agreement is not executory. The Trustee's Amended Motion to Reject the Executory Contract[25] accordingly is denied. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED on January 15. 2012.

KAREN S. JENNEMANN
United States Bankruptcy Judge

---

[24] Debtor cites *In re Warner (Sheehan v. Warner)*, 480 B.R. 641, 651 (Bankr. N.D. W.Va. 2012) (citing *In re Tsiaoushis*, 383 B.R. 616, 619 (Bankr. E.D. Va. 2007) (finding the operating agreement was not executory because the obligation to provide capital contributions was a "remote and speculative fiduciary duty, if one exists, [and was] not a 'material breach excusing the performance of the other.'") and *In re Garrison-Ashburn, L.C.,* 253 B.R. 700, 708-09 (Bankr. E.D. Va. 2000) (holding that the LLC's operating agreement was not executory because it only provided structural, not managerial guidance, because there was no obligation to provide additional capital; no obligation to participate in management; and no obligation to provide any personal expertise or service to the company. Any officer or committee member could resign at any time.)

[25] Doc. No. 61.